UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS CLAYBROOKS,

    Plaintiff,

  v.            Case No. 21-C-752

EATON CORPORATION, et al.,

    Defendants.

## DECISION AND ORDER

  Plaintiff Dennis Claybrooks commenced this action against Defendants Eaton Corporation and Eaton Corporation Long Term Disability Plan (the Plan), alleging that Eaton violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, by denying him long-term disability (LTD) benefits. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. For the following reasons, the decision of the plan administrator is reversed and remanded for a full and fair review of Claybrooks' claim.

## BACKGROUND

  Eaton Corporation is a power management company that manufactures hydraulics, aerospace, and vehicle products. Claybrooks worked for Eaton as a general laborer and was eligible for LTD benefits under the Plan. The Plan is a self-insured employee welfare benefit plan, and Eaton is the plan administrator. The Plan includes both short-term disability (STD) and LTD plans, and Sedgwick is the claims administrator. The STD and LTD plans provide coverage for eligible employees with covered disabilities who comply with the terms of the Plan.

The STD plan provides an employee "with continuing income for up to 26 weeks if a covered disability prevents [him] from working." AR 159. An employee has a "covered disability" under the STD plan if "an occupational or non-occupational illness or injury prevents you from performing the essential duties of your regular position with the Company or the duties of any suitable alternative position with the Company." AR 163. STD payments may end if the employee no longer has a covered disability under the Plan, the employee is unable to provide satisfactory medical evidence of a covered disability, or the employee begins work similar to his work with Eaton for wage or profit with another employer or through self-employment, among other reasons. AR 162. If the employee is disabled longer than 26 weeks, additional benefits may be available under the Eaton LTD plan. AR 159.

An employee is eligible for LTD benefits if he has a "covered disability" and has "exhausted any short-term disability benefits [he is] receiving from the Company's short term disability program." AR 169. An employee has a "covered disability" under the LTD plan if he is "unable to work as the result of an occupational or non-occupational illness or injury." *Id.* The work an employee is unable to do is defined differently over the course of a disability. The employee will be considered disabled if during "[m]onths 1 – 23, including 6 months of short term disability," the employee's disability makes him "[t]otally and continuously unable to perform the essential duties of [his] regular position or any suitable alternative position with the Company." *Id.* The employee will also be considered disabled if, during "[m]onth 24 until [he] is no longer disabled or retire[s]," the employee's disability makes him "[t]otally and continuously unable to engage in any occupation or perform any work for compensation or profit for which [he is], or may become, reasonably well fit by reason of education, training or experience—at Eaton or elsewhere." *Id.* The LTD plan also includes various situations in which benefits will end,

2

Case 1:21-cv-00752-WCG   Filed 07/29/22   Page 2 of 11   Document 23

including if the employee no longer has a covered disability under the Plan, as determined by the claims administrator, or the employee begins work for wage or profit with any employer or through self-employment, unless the work is rehabilitative employment approved by the claims administrator. AR 173.

Eaton, as the plan administrator, and Sedgwick, as the claims administrator, have sole discretionary and final authority to interpret plan documents, determine participant eligibility, and approve or deny claims submitted pursuant to the STD and LTD plans. AR 200. Employees who disagree with Eaton or Sedgwick's determinations may appeal the decision. AR 179. A First-Level Appeal must be filed within 180 days of receipt of the written denial. AR 184. If the First-Level Appeal is denied, the employee must file a Second-Level Appeal within 180 days of receipt of the written denial. AR 185–86.

On May 15, 2019, Claybrooks suffered a workplace injury when he was struck in the head by a falling piece of metal. AR 1456, 1831–33. He began experiencing pain and dizziness and sought care at the emergency room. AR 1825–38. Upon examination, the emergency room physician noted tenderness and swelling near Claybrooks' forehead, though a CT scan revealed no acute intracranial findings. AR 1832, 1837. Claybrooks was discharged with instructions to use over the counter medications to manage his pain. AR 1834, 1868. The following week, Claybrooks returned to the emergency room, complaining of headaches, visual disturbances, and low back pain. AR 1877, 1884. Claybrooks' physical examination was unremarkable, but the emergency room physician confirmed that Claybrooks' symptoms were consistent with a traumatic brain injury. AR 1885–86. Claybrooks sought follow-up treatment for headaches and low back pain. His physician referred him to occupational and physical therapy and instructed him to limit his activity and remain off work. AR 1099.

3

Case 1:21-cv-00752-WCG   Filed 07/29/22   Page 3 of 11   Document 23

On May 21, 2019, Claybrooks submitted a claim to Sedgwick for STD benefits. AR 2093–2100. Sedgwick granted STD benefits from May 23, 2019, to November 11, 2019. AR 1457–59. On November 12, 2019, Sedgwick notified Claybrooks that it had suspended his STD benefits because he was no longer qualified for benefits under the STD plan. AR 1242–43. The next day, Sedgwick sent Claybrooks a letter advising that its records indicated that he may be eligible for disability benefits under the LTD plan and provided instructions to apply for such benefits. AR 1201. On November 28, 2019, Claybrooks applied for LTD benefits. AR 1223–27. Sedgwick denied the claim on December 12, 2019, because Claybrooks' absence from work did not exceed the six-month approved waiting period required for LTD benefits. AR 1205–09. It also noted that, in order to be eligible for LTD benefits, the STD claim must be in "approved" status and that Claybrooks' STD claim was currently denied. AR 1205.

On May 5, 2020, Claybrooks filed a First-Level Appeal regarding Sedgwick's denial of both STD and LTD benefits. AR 1011–18. Sedgwick reversed its decision as to the STD benefits and determined that Claybrooks was eligible for STD benefits through November 20, 2019, the maximum benefit period. AR 1582. Claybrooks was notified of the decision on May 6, 2020. *Id.* Sedgwick denied Claybrooks' First-Level Appeal as to the LTD benefits and notified Claybrooks of the decision on July 23, 2020. AR 905–09. Sedgwick indicated that Claybrooks was denied LTD benefits because he began working for wage or profit. AR 905. It explained that a payroll ledger from Badger Staffing confirmed Claybrooks was actively working for a different employer from January 19, 2020, through May 10, 2020, and that the work was not previously approved by Sedgwick and was not considered to be rehabilitative in nature as required by the LTD plan. *Id.* Claybrooks worked part-time for five months performing custodial work approximately two days per week. AR 489.

4

Claybrooks filed a Second-Level Appeal over the denial of LTD benefits on December 16, 2020, arguing that while he had worked without approval, he should not be disqualified for LTD benefits. AR 782–84. On February 18, 2021, Sedgwick upheld its first-level determination. AR 413–18. It explained that Claybrooks worked for profit for another employer from January 19, 2020, through May 10, 2020, and that Sedgwick had not previously approved the work or considered it rehabilitative. *Id.* Sedgwick also concluded that the medical records and evidence did not support a finding that Claybrooks could not perform his job functions with Eaton. AR 413–14. Claybrooks filed his complaint seeking judicial review on June 17, 2021.

## LEGAL STANDARD

"A denial of benefits normally is reviewed de novo 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "In such a case, the denial of benefits is reviewed under an 'arbitrary and capricious' standard." *Id.* (quoting *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007)). In this case, the parties agree that the arbitrary and capricious standard applies.

"Under the arbitrary and capricious standard, the reviewing court must ensure only that a plan administrator's decision 'has rational support in the record.'" *Id.* (quoting *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006)). "Put simply, an administrator's decision will not be overturned unless it is 'downright unreasonable.'" *Id.* (quoting *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006)). "However, '[r]eview under the deferential arbitrary and capricious standard is not a rubber stamp and deference need not be abject.'" *Id.* (quoting *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003)).

5

"Nevertheless, we will uphold the plan's decision as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Id.* (internal quotation marks and citation omitted)).

## ANALYSIS

Claybrooks asserts that Sedgwick's original December 12, 2019 denial of benefits was unreasonable. Sedgwick provided two reasons for denying Claybrooks' LTD claim. First, Sedgwick concluded that Claybrooks' absence from work did not exceed the six-month approved waiting period required for LTD benefits under the Plan. Second, it explained that an employee's STD claim must be in approved status in order to be eligible for LTD benefits and that Claybrooks' STD claim had been denied. AR 1205. Sedgwick cited the following provision to support its determination:

> Long term disability benefit payments begin on the day immediately following a six-month period during which you have been absent from work due to a covered disability. The waiting period for the start of the LTD benefits begins on the day you become disabled and continues for six months.

*Id.*

Claybrooks contends that Sedgwick's first reason for denial is unreasonable because he was absent from work for over six months when the Plan denied his claim for LTD benefits. He also asserts that, although Sedgwick indicated that it denied LTD benefits because Claybrooks' STD claim was not in approved status, Sedgwick did not reference the specific plan provision on which the assertion is based. Plan administrators are required to provide written notice of a denial, *see* 29 U.S.C. § 1133(1), and "[r]eference the specific plan provisions on which the benefit determination is based," 29 C.F.R. § 2560.503-1(j)(2).

6

Eaton counters that Sedgwick provided sufficient written notice of the denial to Claybrooks. It asserts that, to be eligible for LTD benefits, the employee must have a covered disability and exhausted any STD benefits he is receiving from a company STD program. It maintains that Claybrooks' 26-week STD period began on May 22, 2019, and was set to conclude on November 20, 2019. Because Sedgwick terminated Claybrooks' STD benefits on November 11, 2019, nine days before he would have satisfied the 26-week requirement, Eaton argues that it was reasonable for Sedgwick to determine that Claybrooks did not meet the exhaustion requirement. But Sedgwick did not cite the exhaustion provision to support its denial of LTD benefits. Instead, Sedgwick denied Claybrooks' claim for LTD benefits "based on the fact that [his] absence did not exceed the six month approved waiting period required for disability benefits under the Eaton Corporation Long Term Disability Plan." AR 1205. Claybrooks had stopped working on May 16, 2019, and had not returned to work as of the date the Plan rendered its initial denial effective November 21, 2019. Because Claybrooks was absent from work for more than six months at the time the Plan denied LTD benefits, the basis for Sedgwick's determination was unreasonable.

Although Sedgwick's initial denial may have been unreasonable, Sedgwick provided alternate reasons for its subsequent denial of LTD benefits. In its July 23, 2020 denial of benefits, Sedgwick indicated that an employee's LTD benefits end when the employee begins work for wage or profit with any employer or through self-employment, unless the work is rehabilitative employment approved by the claims administrator. AR 905. It noted that Claybrooks worked for a different employer from January 19, 2020, to May 10, 2020, and that the work was not previously approved by Sedgwick and was not considered to be rehabilitative. *Id.*

In its February 18, 2021, denial of benefits, Sedgwick cited the following provisions to support its determination:

> You begin work for wage or profit with any employer or through self-employment, unless the work is rehabilitative employment (see below) approved by the Claims Administrator.
>
> During the first 24 months, including any period of short term disability, you are totally and continuously unable to perform the essential duties of your regular position with the Company, or the duties of any suitable alternative position with the Company; and
> Following the first 24 months, you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience—at Eaton or elsewhere. The Company, at its sole discretion, determines the availability and suitability of alternative positions at Eaton Corporation.

AR 413. Sedgwick again explained that a payroll ledger from Badger Staffing confirmed that Claybrooks actively worked for a different employer from January 19, 2020, through May 10, 2020. It noted that it had not previously approved the work and that the work was not considered rehabilitative in nature. *Id.* As an additional reason for his denial, Sedgwick also found that for the time period of November 21, 2019, through January 18, 2020, the medical information on file did not support Claybrooks from being able to perform his own job functions. AR 414.

Claybrooks asserts that his employment with a temporary agency after the denial of his claim for LTD benefits cannot reasonably render him ineligible for benefits. The Court agrees. The district court faced a similar situation in *Smith v. Bayer Corporation Long Term Disability Plan*, 444 F. Supp. 2d 856 (E.D. Tenn. 2006), *aff'd in part and vacated in part*, 275 Fed. Appx. 495 (6th Cir. 2008). There the district court rejected an ERISA plan's argument, applying a virtually identical provision, that the plaintiff's acceptance of a job stocking merchandise at a Target Store without first seeking the plan's approval after his claim for LTD benefits was denied provided an alternative plan for the denial of benefits. "Where a claimant's failure to comply with

the requirements of a Plan," the district court held, "is the direct result of the administrator's arbitrary and capricious denial of benefits, the claimant has no continuing responsibility to comply with the terms of the Plan." *Id.* at 875. Because the plaintiff's benefits had been terminated at the time he attempted to earn some income by working at Target, the district court noted, it would have been futile for him to ask the Plan to approve a rehabilitation plan. This part of the district court's decision was affirmed by the Court of Appeals:

> [the plaintiff] should not be penalized by the withholding of partial-disability benefits in this case simply because his Target position was not a pre-approved company rehabilitation program. Bayer had, prior to the plaintiff's employment with Target, made clear to him its position that it considered him physically, mentally, and emotionally able to return to work at his prior position. Consequently, any effort on the plaintiff's part to obtain approval for a rehabilitative position would have been futile. Because the defendants improperly denied [the plaintiff] benefits under the plan, he was forced, in order to provide for himself and his family, to accept some remunerative employment. That act, occasioned by Bayer's own arbitrary and capricious decision, cannot now serve as the basis for the defendant's argument that further benefits are not due [the plaintiff].

*Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 513 (6th Cir. 2008) (citation omitted); *see also Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11, 24–25 (1st Cir. 2003) ("It would be patently unfair to hold that an ERISA plaintiff has a continuing responsibility to update her former insurance company and the court on her disability during the pendency of her internal appeals and litigation, on the off chance that she might prevail in her lawsuit.").

The same reasoning applies here. Claybrooks only began working for a temporary agency after Sedgwick improperly denied his claim for LTD benefits. It would be "patently unfair" to require of Claybrooks the futile act of asking Eaton to approve his part-time work so that he would be eligible to receive the LTD benefits he had already been denied. *Id.* at 25.

Claybrooks argues that Sedgwick's next alternative reason for the denial of LTD benefits—that there was insufficient medical information on file from November 21, 2019, to January 18,

9

2020, to support that Claybrooks was unable to perform his own job duties—was likewise arbitrary and capricious. He asserts that he was denied a full and fair review because he did not have the opportunity to respond to the new rationale contained in the appeal determination. While the Seventh Circuit has not addressed this issue, other circuits have found that a plan's reliance on a new basis for denying a claim for benefits without providing a full and fair review violates ERISA's procedural requirements. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir. 2006) ("[A]n administrator that adds, in its final decision, a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA."); *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 236 (4th Cir. 2008); *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 446 (6th Cir. 2005); *see also Zuckerman v. United of Omaha Life Ins. Co.*, No. 09-CV-4819, 2011 WL 2173629, at *5 (N.D. Ill. May 31, 2011) ("Springing a new 'defense' to a claim at the conclusion of the administrative appeal process defeats both prongs of the '"full and fair" review by the administrator' mandated under ERISA." (citation omitted)). The Court finds this authority persuasive.

Claybrooks asserts that he was prejudiced by this procedural violation because Sedgwick's review of the medical evidence was flawed. In particular, he contends that the Plan failed to consider the impact of his orthopedic limitations and his back pain on his ability to work. Eaton does not dispute that it sprung the defense on Claybrooks for the first time in its final appeal determination or that it denied him a full and fair review. The appropriate remedy is to remand Claybrooks' claim so that he can receive the full and fair review to which he is entitled. *See Holmstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 778 (7th Cir. 2010) ("[T]he proper remedy in an ERISA case, as well as a conventional case, is to remand for further findings or explanations, unless it is so clear cut that it would be reasonable for the plan administrator to deny the application

for benefits on any ground." (citation omitted)). Although Plaintiff requests that the Court retroactively award him past due LTD benefits, after reviewing the administrative record, the Court cannot conclude as a matter of law that Claybrooks is entitled to relief. Accordingly, the case is remanded so that Sedgwick can provide a full and fair review of the grounds for its denial.

## CONCLUSION

For these reasons, the decision of the plan administrator is reversed and remanded for a full and fair review of Claybrooks' claim. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of July, 2022.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge